UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

|  |  |  |
|---|---|---|
| SUSAN CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-260-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| MICHAEL J. ASTRUE, | ) | **OPINION & ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

The Plaintiff, Susan Clark, brought this action under 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner's decision to deny her disability insurance benefits. Because the record contains substantial evidence to support the Commissioner's decision, the Court denies Clark's motion for summary judgment, R. 9, and grants the defendant's, R. 10.

## BACKGROUND

Susan Clark filed an application for disability insurance benefits on March 11, 2009, claiming that she had been disabled since November 2007 because of hepatitis C, polysubstance abuse, panic disorder, and manic depression. Tr. 40, 42. At times, she has also said she suffers from degenerative disc disease. Tr. 14-19, 137, 141. Clark, who is 47 years old, Tr. 117, has a high school education, and she has worked as a cashier, waitress, factory laborer, groundskeeper, and desk clerk. Tr. 11-13, 142.

The Social Security Administration initially denied Clark's application, and then denied it again upon reconsideration. Tr. 55-60, 63-65. Clark requested a hearing, Tr. 67, which an Administrative Law Judge (ALJ) held on March 16, 2010. Tr. 7-34. At the

hearing, Clark testified that she left her factory job because her "back couldn't hold up" and she could neither "stand long" nor "sit long in the same place." Tr. 13. She said she left her other jobs for reasons that were "mental more so than . . . physical" because she "couldn't deal with people, couldn't be around people." Tr. 14. Clark told the ALJ that in 2007, she was diagnosed with hepatitis C at the Strauss Clinic in Berea, Kentucky, and that she received drugs to treat the disease. Tr. 14-15. Around the same time, she also became addicted to morphine. Tr. 18. She did not, however, pursue further treatment for her hepatitis because she lacked the ability to pay for a liver transplant operation. Tr. 15-16. Hearing voices and thinking that everyone was "plotting against" her, Clark entered a hospital in Hazard, Kentucky. Tr. 16-17. As she told the ALJ, she believed her physical ailments had morphed into mental ones. *Id.* Clark, who lives alone, also said she typically spends most of the day lying in bed watching television, getting up only to use the bathroom and fix meals. Tr. at 19-20. Her daughter also visits occasionally to help her with household chores. *Id.*

The ALJ issued a decision on May 18, 2010, finding that Clark is not disabled. Tr. 37-48. In her decision, the ALJ explained that Clark's hepatitis C is not severe enough to disable her. Tr. 42-43. Clark's mental conditions cause her "mild restriction" in daily living and social functioning, and "moderate difficulties" in concentration, but she had not completely lost the ability to participate in everyday life, even temporarily (in psychiatric lingo, any "episodes of decompensation"). Tr. 43. Because of these impairments, the ALJ found that Clark is limited to "simple one, two, or three step job tasks or instructions; work that does not demand close attention to details or complicated job instructions; and low stress work not at a piece work production pace." Tr. 44. She can therefore perform her past job as

a factory laborer, a position that exists in significant numbers in the national economy.  Tr. 46-48.

Clark requested review of the ALJ's decision, which the Social Security Appeals Council denied.  Tr. 1-3, 36.  She then filed suit under 42 U.S.C. § 405(g), and both parties have moved for summary judgment.  R. 9; R. 10.

## DISCUSSION

Judicial review of Social Security Administration decisions is restricted to determining whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record.  *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009)).  Substantial evidence means "more than a scintilla of evidence but less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  If the Social Security Administration's decision is supported by substantial evidence, this Court must affirm that decision even if other evidence in the record supports an opposite conclusion.  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)).  Furthermore, when reviewing Social Security decisions, the Court cannot "try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)).

Clark raises three reasons why the Court should reverse the ALJ's decision.  First, she claims that the ALJ considered each of her impairments separately, rather than their

combined effect, to determine that she was not disabled.  R. 9-1 at 3.  Second, she argues that the ALJ did not consider a separate "durational requirement" when evaluating whether Clark could engage in substantial gainful activity.  *Id*. at 4-5.  And third, she alleges that the ALJ "completely ignored" her treating physician's opinion that Clark is disabled.  *Id*.

## I.     The Combined Effect of Clark's Impairments

When determining whether a claimant is disabled, an ALJ must consider the combined effect of all the claimant's impairments, rather than each impairment individually. *See* 20 C.F.R. § 404.1523.  This duty does not prevent the ALJ from discussing each impairment individually, but ultimately the ALJ must consider the combined effects of all impairments.  *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). Here, it is clear that the ALJ considered the combined effect of Clark's physical and mental impairments.  In her findings of fact, the ALJ specifically noted that Clark did not have a "combination of impairments" that met the requirements for a disability.  Tr. 42, Finding No. 3.  And when determining Clark's residual function capacity, the ALJ discussed both the limitations caused by Clark's "mental impairments" and her hepatitis C.  Tr. 46.  Throughout her decision, the ALJ refers to Clark's "symptoms," "limitations," and "impairments"— always using the plural.  Tr. 42-46.  The record also shows that at Clark's hearing, the ALJ asked hypothetical questions to a vocational expert about an individual with a residual function capacity that encompassed both Clark's physical and mental impairments.  Tr. 30-31.  These facts alone are enough to provide substantial evidence that the ALJ considered Clark's impairments collectively.

In her motion for summary judgment, Clark proclaims that the ALJ must not have considered the cumulative effect of her impairments because "[i]t is clear from the medical

evidence within the records that Plaintiff is severely impaired from her mental and physical difficulties." R. 9-1 at 4. The portion of the record Clark cites for why she is "severely impaired" is a summary of her discharge from the Hazard Psychiatric Center in May 2009. *Id*. This summary indicates that Clark was "calm and cooperative" and "medication compliant" and that she reported "good sleep and appetite" patterns. Tr. 221. She left the hospital with a Global Assessment of Functioning score of 60, *id.*, which indicates "moderate difficulty in social, occupation, or school functioning," rather than severe impairment, R. 10-1. Contrary to Clark's assertions, the ALJ's decision shows that she explicitly considered Clark's hospitalization at the Hazard Psychiatric Center as one factor in her assessment. Tr. 45.

More importantly, however, Clark's argument misses the point. This Court's review is limited to whether the ALJ's decision is supported by substantial evidence, and whether that decision-making process considered the combined effect of Clark's impairments. As the Court has explained, the ALJ's decision encompasses all of Clark's alleged impairments, consistently refers to Clark's impairments in the plural, and relied on testimony from a vocational expert who considered the cumulative impact of Clark's impairments. Nothing was awry about the Commissioner's consideration of Clark's combined impairments.

## II.    The "Durational Requirement" for Substantial Gainful Activity

Clark next argues that the ALJ failed to consider a separate "durational requirement" when determining whether Clark could obtain substantial gainful employment. R. 9-1 at 4-5. As support for this argument, Clark relies on a case from another circuit, *Gatliff v. Comm'r of Soc. Sec.*, 172 F.3d 690 (9th Cir. 1999), which held that an ALJ must consider whether a claimant is capable of holding an available job for a significant period of time. It is true that

5

substantial gainful activity includes the claimant's ability to maintain, and not merely obtain, a job. *See Parish v. Califano*, 642 F.2d 188, 192 (6th Cir. 1981). But an ALJ takes the claimant's ability to maintain employment into account when determining the claimant's residual function capacity. *See Garland v. Astrue*, No. 07-181, 2008 WL 2397566, at *6 (E.D. Ky. June 10, 2008) (Bunning, J.). When the ALJ in this case determined Clark's residual function capacity, she considered the "intensity, persistence, and limiting effects" of Clark's impairments. Tr. 44. These factors directly relate to Clark's ability to maintain employment for a significant period of time.

Even if the Court adopted the Ninth Circuit's separate durational requirement, it is clear that Clark would satisfy this requirement. At the hearing, Clark testified that she worked "off and on" as a cashier for "several years" and that she was employed as a cashier at the Super Test in Richmond, Kentucky for "about a year." Tr. 12. Thus, by her own admissions, Clark has been capable of holding a job for a significant period of time. In *Gatliff*, on the other hand, the Social Security Administration conceded that the claimant could not keep a job for more than two months. 172 F.3d at 692. Clark has not shown that she is unable to hold job for a significant period of time, so her claim also fails on these grounds.

This conclusion should come as no surprise to Clark or her lawyer. District courts in this circuit have "repeatedly rejected any suggestion of a separate durational requirement." *Estes v. Astrue*, No. 10-343, 2011 WL 3903090, at *4 (E.D. Ky. Sept. 6, 2011) (Forester, J.). Instead, our sister courts have reached the same conclusion this Court does today: an ALJ's residual function capacity calculations take into account the claimant's ability to maintain employment. *See, e.g.*, *Barnett v. Astrue*, No. 11-110, 2011 WL 5925534, at *4 (E.D. Ky.

Nov. 28, 2011) (Wilhoit, J.); *Metcalf v. Astrue*, No. 10-358, 2011 WL 2009446, at *5 (E.D. Ky. May 23, 2011) (Reeves, J.); *Wilson v. Astrue*, No. 10-089, 2010 WL 4024893, at *6 (E.D. Ky. Oct. 13, 2010) (Reeves, J.); *Johnson v. Astrue*, No. 08-298, 2009 WL 2473627, at *3 (E.D. Ky. Aug. 10, 2009) (Coffman, C.J.); *Coots v. Astrue*, No. 08-156, 2009 WL 1326260, at *7 (E.D. Ky. May 12, 2009) (Van Tatenhove, J.).

The attorney representing the claimant in many of these cases was Roger Donald Riggs, counsel of record for Ms. Clark. In *Metcalf*, Judge Reeves commented that he was "troubled" because Riggs had argued for a separate durational requirement "on several prior occasions but failed to cite or even acknowledge the growing body of adverse case authority rejecting this argument." 2011 WL 2009446, at *5 n.4. Judge Forester was "similarly troubled" by Riggs's behavior in *Estes*, *see* 2011 WL 3903090, at*6 n.2, and the Court echoes their sentiments today. Mr. Riggs appears to have made a separate durational requirement argument based on *Gatliff* fifty-one times in the Eastern District of Kentucky over the past two years, and all fifty-one times, the district courts have rejected his argument.[1] Mr. Riggs is certainly entitled to present this argument in his filings, but he should, at the very least, acknowledge adverse rulings and explain why they are incorrect. *See* Fed. R. Civ. P. 11(b)(2). He has done neither.

## III.   Weight of the Opinions of Clark's Treating Physician

Clark also argues that the ALJ "completely ignored" the opinion of her treating physician, Dr. Robertson D. Ward. R. 9 at 4-5. Dr. Ward examined Clark in November 2007 and declared that she was "totally disabled and unable to do any work." Tr. 214.

---

[1] The Court arrived at this figure through a Westlaw search of all Kentucky federal district court cases in which Roger Donald Riggs was listed as an attorney and the opinion cited *Gatliff*.

7

Social Security regulations require an ALJ to give controlling weight to a treating physician's opinion, but only if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(d)(2).  In other words, an ALJ is "not bound by conclusory statements of doctors, particularly when they are unsupported by detailed objective criteria and documentation."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).  If the treating physician's opinion does not receive controlling weight, the ALJ is instructed to evaluate a number of factors to determine the appropriate weight of the physician's opinion.  20 C.F.R. § 404.1527(d)(2).  These factors include the length, frequency, nature, and extent of the treatment relationship; the evidence supporting the opinion; the consistency of the opinion with the records as a whole; and the doctor's specialization.  *Id.* §§ 404.1527(d)(2)-(6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  An ALJ must therefore provide a rationale before rejecting a treating physician's opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

    In her decision, the ALJ reviewed Clark's medical record and found only "scant evidence from Dr. Ward" and no evidence to "establish the severity necessary to support his characterization of the claimant as disabled."  Tr. 46.  The ALJ also correctly noted that the determination of disability is an issue reserved for the Social Security Administration, rather than the treating physician.  Tr. 46; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); 20 C.F.R. § 404.1527(e)(1) ("[The Commissioner is] responsible for making the determination or decision about whether you meet the statutory definition of

disability . . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled.").

The ALJ also examined other objective medical evidence in the record before rejecting Dr. Ward's opinion.  *See* Tr. 45-46.  Dr. Robert C. Hoskins conducted a disability examination of Clark for the Social Security Administration in October 2009, and he found that Clark had "no overt evidence of psychiatric illness."  Tr. 797.  Dr. Hoskins could not, however, evaluate Clark's physical ability to do work because she gave "poor effort" on his exam.  *Id.*  Reports from third parties and Clark herself indicated that she is able to care for herself, cook basic meals, care for her dog, and watch television.  Tr. 157-65.  The ALJ found that all of these activities were inconsistent with Dr. Ward's opinion that Clark was "totally disabled."  Tr. 45-46.

Moreover, the ALJ found that Dr. Ward's own medical opinion was contradictory. Tr. 46.  Ward treated Clark when she was hospitalized in October 2007 for abdominal pain, and in his assessment, he noted that Clark's "signs and symptoms were solely related to the hepatitis."  Tr. 861.  Ward then discharged Clark with prescriptions for pain medications, and arranged for her to follow up with a liver specialist in the future.  He made no findings about her ability to perform work, and in fact stated that Clark had "full range of motion in all joints."  *Id.*  Lastly, the ALJ pointed out that even on the day when Dr. Ward opined that Clark was disabled, he reported her health condition as "normal" save for her hepatitis.  Tr. 46, 214.  In light of this evidence, the ALJ gave sufficient reasons for rejecting Dr. Ward's opinion.  *See Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (holding that the Commissioner may reject a treating physician's opinion "if good reasons are not identified for not accepting it.").

9

## CONCLUSION

For the reasons given above, it is **ORDERED** that:

(1)    Plaintiff's Motion for Summary Judgment, R. 9, is **DENIED.**

(2)    Defendant's Motion for Summary Judgment, R. 10, is **GRANTED**.

(3)    Judgment will be entered consistent with this Order.

This the 23rd day of December, 2011.

**Signed By:**

_**Amul R. Thapar**_  *AT*

**United States District Judge**